13 CV 5185

Sanjay Wadhwa JUDGE BERMAN
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281
(212) 336-0181

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

-against-

RICHARD LEE,

    Defendant.

COMPLAINT

ECF CASE

[RECEIVED JUL 25 2013 U.S.D.C. S.D.N.Y. CASHIERS stamp]

---

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Richard Lee ("Lee"), alleges as follows:

## SUMMARY

1. This case concerns insider trading by defendant Lee during his employment as a portfolio manager at the hedge fund management firm S.A.C. Capital Advisors, L.P. ("SAC Capital"). During 2009, Lee executed illegal trades on behalf of SAC Capital in the securities of Yahoo! Inc. ("Yahoo") and 3Com Corporation ("3Com") based on material nonpublic information that he received in advance of separate announcements by these two companies. As a result of Lee's illegal trading, a hedge fund that SAC Capital managed generated more than $1.5 million in profits.

2. On July 10, 2009, Lee was tipped by a sell-side research analyst (the "Yahoo Research Analyst") about nonpublic negotiations between Yahoo and Microsoft Corp. ("Microsoft") to enter into an internet search engine partnership. The Yahoo Research Analyst informed Lee that the information came from a close friend who worked at Microsoft (the "Microsoft Insider"), that the probability of a Microsoft-Yahoo partnership agreement, which had long been the subject of market rumors, had increased, and that a deal was likely to be announced in the next two weeks.

3. Shortly after receiving this material nonpublic information, Lee purchased hundreds of thousands of shares of Yahoo stock for the portfolio that he managed on behalf of SAC Capital, and 25,000 shares of Yahoo stock for his own personal trading account. As a result of these trades, a SAC Capital hedge fund generated substantial profits, and Lee also reaped gains in his personal account.

4. Approximately four months later, on November 11, 2009, Lee received an insider trading tip that Hewlett-Packard Company ("HP") was planning to acquire the computer technology company 3Com.

5. Based on this material nonpublic information, which Lee received from a Beijing-based consultant (the "3Com Consultant") who was close friends with senior executives at 3Com and one of its subsidiaries, Lee purchased several hundred thousand shares of 3Com stock for the portfolio that he managed on behalf of SAC Capital. After the close of regular trading on November 11, 2009, HP and 3Com announced that HP had agreed to acquire 3Com for $2.7 billion. As a result of Lee's trades, a SAC Capital hedge fund reaped substantial profits.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6.  The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The Commission seeks permanent injunctions against Lee, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. In addition, the Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8.  Venue lies in this Court pursuant to Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York. Defendant Lee resided in New York, New York and worked in SAC Capital's New York, New York office during the relevant period. In addition, the relevant communications between Lee and the Yahoo Research Analyst, as well as between Lee and the 3Com Consultant occurred while Lee was in New York, New York.

## DEFENDANT

9.  **Lee,** age 35, currently resides in Chicago, Illinois. During the relevant period, Lee lived in New York, New York and worked as a portfolio manager at SAC

Capital.

## OTHER RELEVANT ENTITIES

10. **Yahoo** is a multinational internet company with its principal place of business in Sunnyvale, California. Yahoo's common stock is registered with the Commission and trades on the NASDAQ stock market under the ticker symbol "YHOO."

11. **Microsoft** is a software company with its principal place of business in Redmond, Washington. Microsoft's common stock is registered with the Commission and trades on the NASDAQ stock market under the ticker symbol "MSFT."

12. **3Com** was a computer technology company with headquarters in Marlborough, Massachusetts. Until HP's acquisition of 3Com was completed, 3Com's common stock was registered with the Commission and traded on the NASDAQ stock market under the ticker symbol "COMS."

13. **HP** is an information technology company with its principal place of business in Palo Alto, California. HP's common stock is registered with the Commission and trades on the NASDAQ stock market under the ticker symbol "HPQ."

14. **SAC Capital** is a Stamford, Connecticut-based investment adviser that has been registered with the Commission since February 2012. SAC Capital manages multiple hedge funds and as of mid-January 2013, had approximately $15 billion in assets under management.

## FACTS

### Lee Trades on the Basis of Inside Information Concerning the Microsoft-Yahoo Internet Search Engine Partnership

15. The Yahoo Research Analyst covered both Microsoft and Yahoo for his research firm and, during 2009, closely followed developments concerning rumored

4

negotiations between Microsoft and Yahoo to form an Internet search engine alliance, including by obtaining inside information concerning the progress of Yahoo and Microsoft's negotiations from the Microsoft Insider.

16. On the evening of July 9, 2009, the Yahoo Research Analyst and the Microsoft Insider spoke via telephone for over 10 minutes. After the conclusion of this telephone call, the Yahoo Research Analyst emailed a senior salesman at his research firm asking to chat prior to the next day's "morning call" during which research firm analysts would brief the firm's salespeople about the stocks they were analyzing. Later that night, the Yahoo Research Analyst emailed the same salesman and stated that he would "like to be on the morning call with some interesting update."

17. The next morning, Friday, July 10, 2009, after the research firm's "morning call," the senior salesman sent an email to numerous firm clients, including SAC Capital, referring to the Microsoft-Yahoo deal and stating: "we are hearing deal talks are starting again – had stopped entirely a few weeks ago but contacts noting that YHOO back at the table."

18. Later that day, Lee arranged to speak with the Yahoo Research Analyst. During the ensuing telephone call, the Yahoo Research Analyst told Lee that he had a close friend who worked at Microsoft, and that the Yahoo Research Analyst's friend had informed him that Yahoo and Microsoft's negotiations concerning the formation of an internet search partnership were moving forward. In addition, the Yahoo Research Analyst told Lee that his Microsoft source informed him that "this deal may happen any time now in the next two weeks." Lee thanked the Yahoo Research Analyst for the "very specific information."

Case 1:13-cv-05185-RMB-DCF   Document 1   Filed 07/25/13   Page 6 of 11

19. Based on the Yahoo Research Analyst's tip, Lee purchased hundreds of thousands of shares of Yahoo stock in a portfolio that he managed on behalf of SAC Capital. Lee also purchased shares of Yahoo stock in his personal trading account.

20. On the evening of July 16, 2009, a press report stated that "unless there is some major glitch, there might finally be a search and online advertising deal struck between Yahoo and Microsoft" and that "[i]f all goes well, the deal could be announced within the next week."

21. On July 10, 2009, the day that the Yahoo Research Analyst tipped Lee, Yahoo common stock closed at $14.93 per share. On July 17, 2009, the first trading day after the release of the press report stating that a Microsoft-Yahoo search engine deal could be announced within a week, Yahoo's stock price climbed approximately four percent and closed at $16.84 per share.

22. Following the July 16 press report about the impending Microsoft-Yahoo partnership, Lee sold the Yahoo shares that he had purchased on behalf of SAC Capital after speaking to the Yahoo Research Analyst and generated substantial profits for a SAC Capital hedge fund. Lee also reaped profits on the Yahoo stock that he purchased in his personal account.

23. On July 29, 2009, Yahoo and Microsoft formally announced that they had entered into a partnership to provide internet search services.

**Lee Trades on the Basis of Inside Information Concerning HP's Acquisition of 3Com**

24. During 2008 and 2009, Lee received information concerning 3Com's business prospects from the 3Com Consultant. Based on his communications with the 3Com Consultant, Lee understood that the 3Com Consultant maintained close

6

relationships with executives at 3Com and at one of its Asia-based subsidiaries, H3C Technologies, Inc. ("H3C").

25. On the morning of November 11, 2009, the 3Com Consultant informed Lee that he had recently communicated with representatives of H3C and tipped Lee as to HP's intention to acquire 3Com.

26. Later in the day on November 11, 2009, Lee purchased several hundred thousand shares of 3Com stock for the portfolio he managed on behalf of SAC Capital. After the close of regular market trading that day, HP announced its intention to acquire 3Com for approximately $2.7 billion, or $7.90 per share, and that both companies' boards of directors had approved the transaction. In reaction to this announcement, the price of 3Com stock jumped $1.77 or 31 percent on November 12, 2009 and closed at $7.46. As a result of Lee's illegal trades, a SAC Capital hedge fund generated substantial illicit profits.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

27. The Commission realleges and incorporates by reference paragraphs 1 through 26, as though fully set forth herein.

28. The information that the Yahoo Research Analyst received from the Microsoft Insider and that the Yahoo Research Analyst subsequently tipped to Lee, concerning the increased likelihood of the Microsoft-Yahoo partnership deal, was material and nonpublic. In addition, the information was considered confidential by Microsoft, the company that was the source of the information, and Microsoft had policies protecting confidential information.

29. Lee knew, recklessly disregarded, or should have known, that the Microsoft Insider owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to keep the information confidential.

30. Lee knew, recklessly disregarded, or should have known, that the material nonpublic information that he received from the Yahoo Research Analyst was disclosed or misappropriated in breach of a fiduciary duty or obligation arising from a similar relationship of trust and confidence.

31. Lee purchased Yahoo securities in the portfolio he managed on behalf of SAC Capital and in his personal trading account while in possession of material nonpublic information that he received from the Yahoo Research Analyst.

32. The information that the 3Com Consultant received from a source inside 3Com (the "3Com Insider") and subsequently tipped to Lee concerning HP's acquisition of 3Com was material and nonpublic. In addition, the information was considered confidential by 3Com, the company that was the source of the information, and 3Com had policies protecting confidential information.

33. Lee knew, recklessly disregarded, or should have known, that the 3Com Insider owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to keep the information confidential.

34. Lee knew, recklessly disregarded, or should have known, that the material information that he received from the 3Com Consultant was disclosed or misappropriated in breach of a fiduciary duty or obligation arising from a similar relationship of trust and confidence.

35. Lee purchased 3Com securities in the portfolio he managed on behalf of SAC Capital while in possession of material nonpublic information that he received from the 3Com Consultant.

36. Lee is liable for the trading of the SAC Capital hedge fund because he directly or indirectly effectuated the trades by the fund and/or unlawfully disclosed material nonpublic information to the fund.

37. By virtue of the foregoing, Lee, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

38. By virtue of the foregoing, Lee, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining defendant Lee from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering defendant Lee to disgorge, with prejudgment interest, all ill-gotten gains received as a result of the conduct alleged in this Complaint, including his own illicit trading profits and the ill-gotten gains of his direct and downstream tippees;

### III.

Ordering defendant Lee to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

## IV.

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       July 25, 2013

*Sanjay Wadhwa*
Sanjay Wadhwa
Senior Associate Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281-1022
(212) 336-0181
WadhwaS@sec.gov

Of Counsel:

Joseph G. Sansone (SansoneJ@sec.gov)
Michael P. Holland (HollandM@sec.gov)
Thomas P. Smith, Jr. (SmithTh@sec.gov)